COGAN, J.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 2 5 2018 ★

BROOKLYN OFFICE

ALHARBI, AHMED; ALHARBI, GAMEELAH; ALHARBI, RIYADH; ASSIEEBY, NIDAL; ALHARBI, AHMAD; MURSHED, YAHYA; MURSHED, GHADEER; NASSER, THABIT, TAHA; THABIT, AISHA, THABIT,QASEM; MUGAMAL, ABDULLAH; MUGAMAL, EMAD; AL NAJJAR, JEHAN; MUGAMAL, DUAA; MUGAMAL, SHAHD; MUGAMAL MUSLEH; MUGAMAL, MOHAMED; MUGAMAL, HUSSAIN; AL-NAMER, SAMIA; MUGAMAL, SADAM; MUGAMAL, YASMEEN; MUGAMAL, SALAH; SALEH, NADIA; MUGAMAL, NOORIA; MUGAMAL, LAYAN; ALI, HUSSEIN; ALI, LAILA, SAEED, DHEYAZAN; SAEED, SAIF; ALDAFRI, RUQAIA; AL SHUGAA, RASHED; MUSSA, ALI; MUSSA, ISEAL; ALGAAD, ALTAZAM; AL SAIDI, AHMED; AHMED, NUGOOD; ALMONTASER, BASSAM; MURSHED, SALEH; RAGIH, AISHA; NAGI, HANAN; HAMOOD, ALI; AHMAD; HUSAIN, MOHAMMED; HUSSEIN, YASEEN; ALMULAIKI, ZAHR; ALMULAIKI, FADIL; SALEH, KAID; ALI, TAHANI; TAHER, MOHAMED; TAHER, YASSIN; QAHTAN, ARWA; QAHTAN, REDAN; ALZOOKARI, HIZAM; AL GAMAL, LUTFIAH; ASSEADY, GAMIL; ASSAEDY, AHMED; ALI, WEDAD; RAGEH, ABDULBASET; SALIM, KAMAL; SALIM, NASSER ALQASSARI, ABDUH AHMED; and YAHYA, EHTIRAM

Case No: 18-cv-

CV 18-2435

Plaintiffs,

v.

MILLER, STEPHEN, Senior Policy Advisor for the President; TRUMP, DONALD J., President of the UNITED STATES OF AMERICA; UNITED STATES OF AMERICA; SULLIVAN, JOHN, Acting Secretary of UNITED STATES DEPARTMENT OF

**EX-PARTE PETITION FOR EMERGENCY WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

STATE; UNITED STATES DEPARTMENT OF STATE; )
UNITED STATES EMBASSY IN DJIBOUTI; NIELSEN, )
KIRSTJEN, Secretary of UNITED STATES )
DEPARTMENT OF HOMELAND SECURITY; )
UNITED STATES DEPARTMENT OF HOMELAND )
SECURITY; WRAY, CHRISTOPHER, Director of )
FEDERAL BUREAU OF INVESTIGATIONS; FEDERAL)
BUREAU OF INVESTIGATIONS; U.S. CUSTOMS AND )
BORDER PROTECTION and SESSIONS, JEFFERSON, )
Attorney General of the UNITED STATES OF AMERICA )
)
Defendants. )
)

COME NOW the Plaintiffs Ahmed Alharbi, Gameelah Alharbi, Riyadh Alharbi, Nidal Assieeby, Ahmad Alharbi, Yahya Murshed, Ghadeer Murshed, Saadiah Nasser, Taha Thabit, Aisha Thabit, Qasem Thabit, Abdullah Mugamal, Emad Mugamal, Jehan Alnajjar, Duaa Mugamal, Shahd Mugamal, Musleh Mugamal, Mohamed Mugamal, Hussain Mugamal, Samia Al-Namer, Sadam Mugamal, Yasmeen Mugamal, Salah Mugamal, Nadia Saleh, Nooria Mugamal, Layan Mugamal, Hussein Ali, Laila Ali, Dheyazan Saeed, Ruqaia Aldafri, Rashed Al Shugaa, Ali Mussa, Iseal Mussa, Altazam Algaad, Ahmed Al Saidi, Nugood Ahmed, Bassam Almontaser, Saleh Murshed, Aisha Ragih, Hanan Nagi, Ali Hamood, Mohammed Husain, Yaseen Hussein, Zahr Almulaiki, Fadil Almulaiki, Kaid Saleh, Tahani Ali, Mohamed Taher, Yassin Taher, Arwa Qahtan, Redan Qahtan, Hizam Alzookari, Lutfiah Al Gamal, Gamil Assaedy, Ahmed Assaedy, Wedad Ali, Abdulbaset Rageh, Kamal Salim, Nasser Salim, Abduh Ahmed Alqassari, and Ehtiram Yahya and for their Writ of Mandamus and Complaint for Declaratory and Injunctive Relief against Defendants, allege as follows:

## PRELIMINARY STATEMENT

1.  Plaintiffs-Petitioners Ahmed Alharbi, Yahya Murshed, Saadiah Nasser, Abdullah Mugamal, Hussein Ali, Ahmed Alharbi, Ruqaia Aldafri, Ali Mussa, Altazam Algaad, Nugood Ahmed, Saleh Murshed, and Hanan Nagi, are United States citizens and/or

Legal Permanent Residents who each filed a *Form I-130, Petition for Alien Relative* on behalf of their qualifying immediate relative. The United States Citizenship and Immigration Services ("USCIS") approved each Plaintiff-Petitioner's Form I-130 Petition.

2. Thereafter, the Petitions were processed by the National Visa Center ("NVC") and ultimately forwarded to the United States Embassy in Djibouti ("Embassy"). Plaintiffs-Beneficiaries Gameelah Alharbi, Riyadh Alharbi, Nidal Assieby, Ahmad Alharbi Ghadeer Murshed, Taha Thabit, Aisha Thabit, Qasem Thabit, Emad Mugamal, Jehan Alnajjar, Duaa Mugamal, Shahd Mugamal, Musleh Mugamal, Mohamed Mugamal, Hussain Mugamal, Samia Al-Namer, Sadam Mugamal, Yasmeen Mugamal, Salah Mugamal, Nadia Saleh, Nooria Mugamal, Layan Mugamal, Laila Ali, Dheyazan Saeed, Rashed Al Shugaa, Iseal Mussa, Ahmed Al Saidi, Bassam Almontaser, Aisha Ragih, and Ali Hamood, were each provided an immigrant visa interview by the Embassy.

3. Upon completion of each Plaintiffs-Beneficiaries' immigrant visa interview, the Embassy approved each Plaintiffs-Beneficiaries' immigrant visa application.

4. Rather than print Plaintiffs-Beneficiaries approved immigrant visas, the Embassy delayed printing each Plaintiff-Beneficiaries' immigrant visa. After subjecting Plaintiffs-Beneficiaries' to months of delay, Defendants refused Plaintiffs-Beneficiaries previously approved visas because *President Proclamation 9645* purportedly precluded them from issuing immigrant visas to Plaintiff-Beneficiaries. However, Plaintiffs-Beneficiaries' immigrant visas were approved before the Presidential Proclamation was in effect and therefore not subject to the Proclamation. More importantly, the only reason Plaintiffs-Beneficiaries were in the position to even be "refused" based on the Presidential Proclamation was due to Defendants' unreasonable delay in printing Plaintiffs-Beneficiaries' approved immigrant visas.

5. Defendants unreasonable delay in printing Plaintiffs-Beneficiaries' previously approved immigrant visas was due to Defendants purposeful and routine scheme in

delaying immigrant visa applications for Yemen nationals.

6. Defendants' delay in printing Plaintiff-Beneficiaries' previously approved immigrant visas is particularly egregious in this case due to the fact that Defendants stalled in printing the immigrant visas until the Presidential Proclamation took effect and then wrongfully refused the previously approved visas by erroneously citing the Presidential Proclamation.

7. To date, Plaintiffs-Beneficiaries have been trapped in Djibouti, unable to travel to the United States to reunite with their families due to Defendants wrongful refusal of their previously approved immigrant visas. Plaintiffs-Beneficiaries cannot return to Yemen as they fled their homes due to the intense war, devastating famine, and disease that has engulfed the country.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to the 28 U.S.C. § 1331 as it raises claims that arise under the Constitution of the United States, federal statutes, and a Presidential Proclamation. This action brings claims under First and Fifth Amendment of the Constitution, the Immigration and Nationality Act (INA), 8 U.S.C. 1101, et seq., and the Administrative Procedures Act ("APA"), *5 U.S.C. 701*, et seq., 42 U.S.C. 1985(3), and Presidential Proclamation 9645: *Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public Safety Threats*.

9. Jurisdiction is further alleged pursuant to *28 U.S.C. 1361.*

10. This Court is competent to adjudicate this case, notwithstanding the doctrine of consular non-reviewability, as Plaintiffs are not challenging a decision within the discretion of the Consulate, but rather challenging the Consulate's failure to provide a facially legitimate and bona fide reason for denial of the petition. *Kleindinst v. Mandel*, 408 U.S. 753 (1972).

4

11. Additionally, this Court is competent to adjudicate this case because Plaintiffs assert the consular officer acted in bad faith by permitting other federal agencies to make the final determination on the Plaintiffs' immigrant visa. Thus, pursuant to Justice Kennedy's concurrent opinion in *Kerry v. Din*, 135 S.Ct. 2128 (2015), if plaintiffs can demonstrate that the consular officer did not provide a facially legitimate and bona fide reason for denial the doctrine of consular non-reviewability is pierced.

12. Accordingly, jurisdiction exists for this Court to decide whether the consular officer has the authority to refuse a visa application in bad faith and without a facially legitimate and bona fide reason. *Kerry v. Din*, 135 S.Ct. 2128 (2015); *Kleindinst v. Mandel*, 408 U.S. 753 (1972).

13. This action is also brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) under the Equal Protection Clause of the Fifth Amendment of the United States Constitution.

14. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 on the following grounds: (1) a plaintiff resides in this judicial district, or the defendants are officers or employees of the United States or agencies in the United States who are sued in their official capacity for their acts under the color of legal authority (28 U.S.C. § 1391 (e)(1)); (2) acts or omissions giving rise to this petition occurred in this judicial district (28 U.S.C. § 1391 (e)(2)); and (3) no real property is involved (28 U.S.C. § 1391 (e)(3)).

## PARTIES

**Plaintiffs**

### Alharbi Family

15. Plaintiff Ahmed Alharbi is a citizen of the United States of America and the husband of Plaintiff Gameelah Alhardbi. Plaintiffs Ahmed Alharbi and Gameelah Alharbi are the parents of Plaintiff Riyadh Alharbi. Plaintiff Ahmed Alharbi resides in Brooklyn,

5

New York.

16. Plaintiff Riyadh Alharbi is the husband of Plaintiff Nidal Assieby. Plaintiffs Riyadh and Nidal are the parents of Ahmad Alharbi.

17. Plaintiffs Gameelah Al-Harbi, Riyadh Alharbi, Nidal Assieby, and Ahmad Alharbi are all nationals of Yemen. They currently resides in Djibouti City, Djibouti.

**(Yahya) Murshed Family**

18. Plaintiff Yahya Murshed is a citizen of the United States of America and the father of Plaintiff Ghadeer Murshed. He resides in New York City, New York.

19. Plaintiff Ghadeer Murshed is a national of Yemen and the daughter of Plaintiff Yahya Murshed. She currently resides in Djibouti City, Djibouti.

**Nasser Family**

20. Plaintiff Saadiah Nasser is a Legal Permanent Resident. She is the mother of Plainiffs Taha Thabit, Aisha Thabit, and Qasem Thabit.

21. Plaintiffs Taha Thabit, Aisha Thabit, and Qasem Thabit are nationals of Yemen. They currently reside in Djibouti City, Djibouti.

**Mugamal Family**

22. Plaintiff Abdulla Mugamal is a citizen of the United States of America and the father of Plaintiffs Emad Mugamal, Salah Mugamal, and Hussain Mugamal. He is the father-in-law of Plaintiffs Jehan Alnajjar, Samia Al-Namer, and Nadia Saleh. He is the grandfather of Plaintiffs Duaa Mugamal, Shahd Mugamal, Musleh Mugamal, Mohamed Mugamal, Sadam Mugamal, Yasmeen Mugamal, Nooria Mugamal, and Layan Mugamal.

23. Plaintiff Emad Mugamal is the son of Abdulla Mugamal and a national of Yemen. He is married to Jehan Alnajjar, who is also a national of Yemen. Plaintiffs Emad Mugamal

and Jehan Alnajjar are the parents of Duaa Mugamal, Shahd Mugamal, Musleh Mugamal, and Mohamed Mugamal. The family currently resides in Djibouti City, Djibouti.

24. Plaintiff Hussain Mugamal is the son of Abdulla Mugamal and a national of Yemen. He is married to Samia Al-Namer, who is also a national of Yemen. Plaintiffs Hussain Mugamal and Samia Al-Namer are the parents of Sadam Mugamal and Yasmeen Mugamal. The family currently resides in Djibouti City, Djibouti.

25. Plaintiff Salah Mugamal is the son of Abdulla Mugamal and a national of Yemen. He is married to Nadia Saleh, who is also a national of Yemen. Plaintiffs Salah Mugamal and Nadia Saleh are the parents of Nooria Mugamal and Layan Mugamal. The family currently resides in Djibouti City, Djibouti.


**(Hussein) Ali family**

26. Plaintiff Hussein Ali is a citizen of the United States of America and the father of Plaintiff Laila Ali. He is the father-in-law of Plaintiff Dheyazan Saeed and the grandfather of Plaintiff Saif Saeed.

27. Plaintiff Laila Ali is the daughter of Plaintiff Hussein Ali and a national of Yemen. She is married to Plaintiff Dheyazan Saeed, who is also a national of Yemen. Plaintiffs Laila Ali and Dheyazan Saeed are the parents of their newborn, Plaintiff Saif Saeed.


**Aldafri Family**

28. Plaintiff Ruqaia Aldafri is a citizen of the United States of America and the wife of Plaintiff Rashed Al Shugaa.

29. Plaintiff Rashed Al Shugaa is a national of Yemen and the husband of Plaintiff Ruqaia Aldafri. He currently resides in Djibouti City, Djibouti.

**Mussa Family**

30. Plaintiff Ali Musa is a citizen of the United States of America and the father of Plaintiff Iseal Mussa.

31. Plaintiff Iseal Mussa is the son of Plaintiff Ali Mussa and a national of Yemen. He currently resides in Djibouti City, Djibouti.

**Algaad Family**

32. Plaintiff Altazam Algaad is a citizen of the United States of America, and the wife of Plaintiff Ahmed Al Saidi.

33. Plaintiff Ahmed Al Saidi is the husband of Plaintiff Altazam Algaad a national of Yemen. He currently resides in Djibouti City, Djibouti.

**Ahmed Family**

34. Plaintiff Nugood Ahmed is a citizen of the United States of America and the wife of Plaintiff Bassam Almontaser.

35. Plaintiff Bassam Almontaser is the husband of Plaintiff Nugood and a national of Yemen. He currently resides in Djibouti City, Djibouti.

**(Saleh) Murshed Family**

36. Plaintiff Saleh Murshed is a citizen of the United States of America and the husband of Plaintiff Aisha Ragih.

37. Plaintiff Aisha Ragih is the wife of Plaintiff Saleh Murshed and a national of Yemen. She currently resides in Djibouti City, Djibouti.

**Nagi Family**

38. Plaintiff Hanan Nagi is a citizen of the United States of America and the wife of Plaintiff Ali Hamood.

39. Plaintiff Ali Hamood is the husband of Plaintiff Hanan Nagi and a national of Yemen. He currently resides in Djibouti City, Djibouti.

**Husain Family**

40. Plaintiff Mohammed Husain is a citizen of the United States of America and the father of Plaintiff Yaseen Hussein.

41. Plaintiff Yaseen Hussein is the son of Plaintiff Mohammed Husain and a national of Yemen. He currently resides in Djibouti City, Djibouti.

**Almulaiki Family**

42. Plaintiff Zahr Almulaiki is a citizen of the United States of America and the wife of Plaintiff Fadil Almulaiki.

43. Plaintiff Fadil Almulaiki is the husband of Plaintiff Zahr Almulaiki and a national of Yemen. He currently resides in Djibouti City, Djibouti.

**Saleh Family**

44. Plaintiff Kaid Saleh is a citizen of the United States of America and the husband of Plaintiff Tahani Ali.

45. Plaintiff Tahani Ali is the wife of Plaintiff Kaid Saleh and a national of Yemen. She currently resides in Djibouti City, Djibouti.

**Taher Family**

46. Plaintiff Mohamed Taher is a citizen of the United States of America and the father of Plaintiff Yassin Taher.

47. Plaintiff Yassin Taher is the son of Plaintiff Mohamed Taher and a national of Yemen. He currently resides in Djibouti City, Djibouti.

**Qahtan Family**

48. Plaintiff Arwa Qahtan is a citizen of the United States of America and the sister of Plaintiff Redan Qahtan.

49. Plaintiff Redan Qahtan is the brother of Plaintiff Arwa Qahtan and a national of Yemen. He currently resides in Djibouti City, Djibouti.

**Alzookari Family**

50. Plaintiff Hizam Alzookari is a citizen of the United States of America and the husband of Plaintiff Lutfiah Al Gamal.

51. Plaintiff Lutfiah Al Gamal is the wife of Plaintiff Hizam Alzookari and a national of Yemen. She is currently resides in Djibouti City, Djibouti.

**Assaedy Family**

52. Plaintiff Gamil Assaedy is a citizen of the United States of America and the father of Plaintiff Ahmed Assaedy.

53. Plaintiff Ahmed Assaedy is the son of Plaintiff Gamil Assaedy and a national of Yemen. He currently resides in Djibouti City, Djibouti.

**(Wedad) Ali Family**

54. Plaintiff Wedad Ali is a Legal Permanent Resident and the wife of Plaintiff Abdulbaset Rageh.

55. Plaintiff Abdulbaset Rageh is the husband of Plaintiff Wedad Ali and a national of Yemen. He currently resides in Djibouti City, Djibouti.

**Salim Family**

56. Plaintiff Kamal Salim is a citizen of the United States of America and the father of Plaintiff Nasser Salim.

57. Plaintiff Nasser Salim is the son of Plaintiff Kamal Salim and a national of Yemen. He currently resides in Djibouti City, Djibouti.

**Alqassari Family**

58. Plaintiff Abdu Ahmed Alqassari is a citizen of the United States of America and the husband of Plaintiff Ehtiram Yahya.

59. Plaintiff Ehtiram Yahya is the wife of Plaintiff Abdu Ahmed Alqassari and a national of Yemen. She currently resides in Djibouti City, Djibouti.

**Defendants**

60. Defendant Stephen Miller (hereinafter "Defendant Miller") is the Senior Policy Advisor for the President. Defendant Miller is a key political advisor to President Donald Trump. Defendant Miller was the chief architect of the President Trump's Executive Order 13769. Defendant Miller played a significant role in the drafting of President Trump's Executive Order 13780 and Presidential Proclamation 9645. Defendant Miller has been a staunch advocate of restricting the entry and migration of Muslims in the United States. He is being sued in his official and individual capacity.

61. Defendant President Donald J. Trump (hereinafter "Defendant President Trump") is a self-proclaimed real estate tycoon who has never held any political office before being elected President of the United States of America. Defendant President Trump is the head of the Executive Branch of the United States of America. Defendant President Trump possesses the authority to execute lawful executive orders and presidential proclamations. Defendant President Donald J. Trump signed Executive Order 13769 which banned the entry of nationals from seven majority-Muslim countries. Executive Order 13769 was enjoined by various federal courts, and thereafter President Trump signed Executive Order 13780, which banned nationals from six majority-Muslim countries. Executive Order 13780 was also subsequently enjoined by various federal

courts. Thereafter, President Trump issued Presidential Proclamation 9645 on September 24, 2017, which restricts entry from nationals of Yemen, among six other Muslim-majority countries. Defendant President Trump is being sued in his official and individual capacity.

62. Defendant United States of America is the sovereign entity with the power and constitutional mandate to adhere to an enforce the provisions of the United States Constitution and all federal laws and regulations of the United States of America, including those provisions of the Constitution and laws and regulations of the United States herein enumerated.

63. Defendant John Sullivan (hereinafter "Defendant Sullivan") is the Acting Secretary of the Department of State. Defendant Sullivan is the highest ranking official within the Department of State ("DOS"). The Secretary is responsible for the implementation of the Immigration and Nationality Act and for ensuring compliance with applicable federal laws abroad, including the Administrative Procedures Act. Defendant Sullivan is being sued in his official capacity. The Secretary maintains offices inside the United States as well as abroad. Defendant Sullivan is being sued in his official and individual capacity.

64. Defendant United States Department of State is the Federal Agency responsible for managing and directing consular affairs and adjudicating visa applications abroad.

65. Defendant United States Embassy in Djibouti (hereinafter "Defendant Embassy") is responsible for processing and adjudication visa applications in accordance with the INA and the Constitution of the United States of America.

66. Defendant Kirstjen Nielsen (hereinafter "Defendant Nielsen") is the Secretary of the Department of Homeland Security ("DHS"). DHS is the agency responsible for implementing the Immigration and Nationality Act ("INA"). Defendant Nielsen is generally charged with the enforcement of the INA and is responsible for implementing the provisions of the INA. Defendant Nielsen is further authorized to delegate such

powers and authority to subordinate DHS employees. *See 8 U.S.C. § 1103(a); 8 C.F.R. § 2.1.* Defendant Nielsen is being sued in her official capacity and individual capacity.

67. Defendant Department of Homeland Security is the overarching Federal Agency of the Executive Branch of the United States of America that has been delegated the authority over, inter alia, (1) visa applications and applications to adjust status, including coordinating the timely completion of background checks with the Federal Bureau of Investigations; (2) immigration generally; (3) customs; (4) and border security. Congress has not delegated the authority to adjudicate visas to the Department of Homeland Security. Visa issuance and refusal rests with the Consulate pursuant to *I.N.A. § 221.*

68. Defendant Christopher Wray (hereinafter "Defendant Wray") is the Director of the Federal Bureau of Investigation (hereinafter "FBI"), the United States' primary federal law enforcement agency. The FBI, among other functions, conducts background and security checks for USCIS and DHS regarding applicants seeking immigration benefits. Defendant Wray is being sued in his official and individual capacity.

69. Defendant FBI is an intelligence and security service of the United States and its principal federal law enforcement agency. The FBI is the leading domestic security agency on counterterrorism, counterintelligence, and organized crime. In addition to its domestic focus, the FBI maintains a significant international footprint, operating 63 Legal Attaché offices and sub-offices in U.S. embassies and consulates across the world.

70. Defendant U.S. Customs and Border Protection (hereinafter "Defendant CBP") is the Federal Agency responsible for enforcing the laws and regulations of the United States related to customs, immigration, the protection and control of United States' borders and ports of entry.

71. Defendant Jefferson Sessions (hereinafter "Defendant Sessions") is the Attorney General of the United States of America. The Attorney General is the chief lawyer of

the United States government. The Immigration and Nationality Act charges the Attorney General with the administration and enforcement of the Act and all other laws related to immigration and naturalization of immigrants. Moreover, the Attorney General has control, direction, and supervision of all employees and all the files and records of USCIS. Defendant Sessions is being sued in his official and individual capacity.

## STATEMENT OF FACTS

**Factual Allegations Common to All Plaintiffs**

72. Each Plaintiff-Petitioner is either a United States citizen or Legal Permanent Resident who filed a *Form I-130 Petition for Alien Relative* for their respective Plaintiff-Beneficiary relative.

73. Each Plaintiff-Beneficiary is a national of Yemen. Each Plaintiff-Beneficiary fled the devastating war in Yemen. Plaintiffs-Beneficiaries experienced first-hand the horrific violence, famine, and disease that has engulfed Yemen.

74. Plaintiff-Beneficiaries traveled through countless checkpoints as they traveled through Yemen to reach the airport or sea port and find a flight or boat leaving Yemen headed to Djibouti.

75. Upon arriving in Djibouti, Plaintiff-Beneficiaries each contacted the Embassy in order to be scheduled for an immigrant visa interview. Before appearing for the interview, each Plaintiff-Beneficiary underwent a medical exam as required for the immigrant visa application.

76. The Embassy provided each Plaintiff-Beneficiary an interview in connection with their immigrant visa application. Upon the completion of each Plaintiff-Beneficiaries immigrant visa interview, the Embassy approved each immigrant visa application.

77. Rather than print Plaintiff-Beneficiaries' approved immigrant visas as required by law, Defendants delayed the printing of the approved immigrant visas.

78. Presidential Proclamation 9645 was signed by Defendant Trump on September 24, 2017, which restricted the entry of Yemen nationals into the United States.

79. Presidential Proclamation was enjoined by a United States district judge in Hawaii on October 17, 2018. The next day, on October 18, 2017, a United States district judge in Maryland also issued an injunction against the implementation of Presidential Proclamation 9645.

80. After Presidential Proclamation 9645 was enjoined, Plaintiffs, through undersigned counsel, reached out to the Embassy to print Plaintiffs-Beneficiaries' approved immigrant visas.

81. Defendants continued to fail to print Plaintiffs-Beneficiaries' approved immigrant visas.

82. On December 4, 2017, the United States Supreme Court issued an order allowing the government to enforce Presidential Proclamation 9645.

83. After Presidential Proclamation 9645 took effect, Defendants wrongfully refused Plaintiffs-Beneficiaries previously approved immigrant visas.

84. Defendants purposefully delayed printing Plaintiffs-Beneficiaries' approved immigrant visas until the Presidential Proclamation took effect and then refused it on those grounds.

85. Defendants erred in refusing Plaintiffs-Beneficiaries previously approved immigrant visas because Presidential Proclamation does not apply to immigrant visas approved before the implementation of the Proclamation.

86. Additionally, the only reason Defendants were able to erroneously refuse Plaintiffs-Beneficiaries' previously approved immigrant visas was due to Defendants' deliberate and wrongful delay in printing the approved immigrant visas.

87. More importantly, Defendants failed to provide Plaintiffs with an opportunity to submit a waiver before wrongfully refusing their immigrant visa pursuant to the Presidential Proclamation.

88. Defendants' failure to print Plaintiffs-Beneficiaries' immigrant visas and wrongfully refusing their previously approved immigrant visas was an egregious violation of the APA, INA, and Due Process rights of Plaintiffs.

89. So long as Defendants continue to wrongfully refuse to print Plaintiffs-Beneficiaries previously approved immigrant visas, Plaintiffs will continue to suffer irreparable harm.

**Factual Allegations of Each Plaintiff-Family**

**Alharbi Family**

90. Plaintiff Ahmed Alharbi filed a Form I-130 Petition for his wife, Plaintiff Gameelah Naji Alharbi, and their kids, including Plaintiff Riyadh Alhabir on or about February 29, 2008. The Form I-130 was approved on or about 2011. Thereafter, the Petition was sent to the U.S. Embassy in Sana'a, Yemen in early 2011.

91. On or about April 2011, the U.S. Embassy in Sana'a interviewed Plaintiff Gameelah Naji Alharbi. Plaintiff Gameelah Naji Alharbi's immigrant visa was approved but some of her children's visas were still pending, including Plaintiff Riyadh Alharbi. Plaintiff Gameelah could not travel on her visa because she could not leave her young children behind in Yemen.

92. After the U.S. Embassy in Sana'a closed, Plaintiff Gameelah Naji Alharbi and Plaintiff Riyadh Alharbi's immigrant visa applications were transferred to the U.S. Embassy in Djibouti. Plaintiff Gameelah Naji Alharbi was provided an immigrant visa interview by the U.S. Embassy in Djibouti on or about May 7, 2017. Plaintiff Riyadh Alharbi and his wife and children were provided an immigrant visa interview on November 22, 2017.

93. On July 27, 2017 Plaintiff Ahmed Alharbi appeared at the U.S. Embassy in Djibouti with Plaintiff Gameelah Naji Alharbi and their child, Butheina Alharbi in order for her to be issued her Consular Report of Birth Abroad. On that same day, the U.S. Embassy

in Djibouti issued visas for Plaintiffs Ahmed Alharbi and Gameealah Naji Alharbi's children, Mohamed Alharbi, Saleh Alharbi, Sam Alharbi, Mariam Alharbi, and Afnan Alharbi. The U.S. Embassy in Djibouti told Gameelah Alharbi that her visa would be issued shortly.

94. After being subjecting Plaintiff Gameelah Naji Alharbi to more than eight delay, Defendants issued Plaintiff Gameelah Naji Alharbi a refusal citing Presidential Proclamation 9645 as the basis for the refusal.

95. After subjecting Plaintiff Riyadh Alharbi and his wife and children to months of delay, Defendants issued Plaintiff Riyadh Alharbi a refusal notice citing Presidential Proclamation 9645 as the basis for the refusal.

96. Plaintiffs Ahmed Alharbi, Gameelah Alharbi, Riyadh Alharbi, Nidal Assieeby, and Ahmad Alharbi have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Gameelah Aharbi, Riyadh Alharbi, Nidal Assieeby, and Ahmad Alharbi's immigrant visas and/or provide them with an opportunity to submit a waiver.

**(Yahya) Murshed Family**

97. Plaintiff Yahya Murshed filed a *Form I-130, Petition for Alien Relative* for Plaintiff Ghadeer Murshed, Aisha Alzandani, Ahmed Murshed, and Elyas Murshed on or about March 18, 2016. The I-130 Petitions were approved by USCIS on or about April 6, 2017. Thereafter, the NVC processed the I-130 Petitions. Per Plaintiffs' request, the Petitions were expedited to Defendant Embassy on or about August 16, 2017.

98. Upon receiving the Petitions, Defendant Embassy scheduled Plaintiff Ghadeer Murshed, Aisha Alzandani, Ahmed Murshed, and Elyas Murshed for an immigrant visa interview at the United States Embassy in Djibouti on or about August 28, 2017. Upon completion of the interview, the Defendant Embassy provided Plaintiff Ghadeer Murshed, Aisha Alzandani, Ahmed Murshed, and Elyas Murshed with a document

indicating that their immigrant visas was approved.

99. Although Plaintiff Ghadeer Murshed, Aisha Alzandani, Ahmed Murshed, and Elyas Murshed's immigrant visas were approved, Defendants delayed the issuance of the visas. On or about September 28, 2017, Defendant Embassy issued Ahmed Murshed and Elyas Murshed's immigrant visas. One month after Ahmed Murshed and Elyas Murshed received their immigrant visas, Defendant Embassy issued Aisha Alzandani's immigrant visa on or about October 29, 2017.

100. Aisha Alzandani inquired about her daughter's immigrant visa, to which Defendant Embassy replied that Plaintiff Ghadeer Murshed's visa was still in processing. Plaintiff Ghadeer Murshed's family were awaiting for Plaintiff Ghadeer Murshed's visa to be issued, but were concerned if they waited too long their visas would expire. Moreover, with the looming threat of the Trump Administration's impeding Muslim Ban, they feared their visas would be revoked. Consequently, Plaintiff Ghadeer Murshed's family was forced to travel to the United States without her.

101. After being subjecting Plaintiff Ghadeer Murshed to a more than four month delay, Defendants issued Plaintiff Ghadeer Murshed a refusal citing Presidential Proclamation 9645 as the basis of the refusal.

102. Plaintiffs Yahya Murshed and Ghadeer Murshed have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Ghadeer Murshed's immigrant visa and/or provide her with an opportunity to submit a waiver.


**Nasser Family**

103. Plaintiff Saadiah Nasser filed a Form I-130 Petition on behalf of her children, Taha Thabit, Aisha Thabit, and Qasem Thabit on or about December 18, 2012. After years of delays by USCIS, the Petition was finally approved on or about June 20, 2016. Thereafter the Petition was forwarded to NVC for immigrant visa processing. NVC

sent the Petition to the U.S. Embassy in Djibouti on or about July of 2017.

104.     The U.S. Embassy in Djibouti interviewed Plaintiffs Taha Thabit, Aisha Thabit, and Qasem Thabit regarding their Immigrant Visa Application on or about August 14, 2017. Plaintiff Qasem suffers from Down syndrome and has severe difficulties with speech, comprehension, and walking. He requires twenty-four hour care from his siblings, Plaintiffs Taha and Aisha Thabit. The consular officer interviewing Plaintiffs Taha, Aisha, and Qasem Thabit recognized the dire medical condition of Plaintiff Qasem and upon completion of the interview gave the family an approval notice.

105.     Thereafter, Plaintiffs Taha and Aisha inquired about when their visa would be printed, but the U.S. Embassy in Djibouti would simply reply that their visas were in processing. Plaintiff Qasem's medical condition continued to worsen. Plaintiff Taha Thabit attempted to take Plaintiff Qasem to get medical care in Djibouti, but the country lacks proper medical facilities.

106.     After being subjecting Plaintiffs Taha, Aisha, and Qasem Thabit to a four month delay, Defendants issued Plaintiff Taha, Aisha, and Qasem Thabit refusals citing Presidential Proclamation 9645 as the basis of the refusal.

107.     Plaintiffs Saadiah Nasser, Taha Thabit, Aisha Thabit, and Qasem Thabit have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiffs Taha, Aisha, and Qasem Thabit's immigrant visas and/or provide them with an opportunity to submit a waiver.

**Mugamal Family**

108.     Plaintiff Abdulla Mugamal filed an I-130 Petition for his children, Plaintiffs Emad Mugamal, Hussain Mugamal, and Saleh Mugamal in 1992. The Petition was approved and forwarded to the U.S. Embassy in Sana'a, Yemen. The U.S. Embassy in Sana'a delayed processing the family's immigrant visa applications for years.

109.     After the war broke out in Yemen and the U.S. Embassy in Sana'a was shut down,

the NVC forwarded their application to the U.S. Embassy in Djibouti. Plaintiff Emad Mugamal and wife and children along with Plaintiff Hussain Mugamal and his wife and children came to Djibouti in October of 2016. Plaintiff Saleh Mugamal and his wife and children made it Djibouti in March of 2017.

110.    The Mugamal family had waited so long since their father had initially petitioned for them in 1992, that Plaintiffs Emad, Hussain, and Salah were now married adults with children.

111.    On September 26, 2017, the U.S. Embassy in Djibouti interviewed Plaintiff Emad Mugamal and his wife and children as well as Plaintiff Hussain Mugamal and his wife and children regarding their immigrant visa application.

112.    On September 28, 2017, the U.S. Embassy in Djibouti interviewed Plaintiff Salah Mugamal and his wife and children regarding their immigrant visa application.

113.    On September 28, 2017, the Embassy approved immigrant visas for Plaintiffs Emad, Hussain, and Salah Mugamal, and their derivatives.

114.    After subjecting the Mugamal family to nearly four months of delay, Defendants erroneously refused the previously approved immigrant visas for Plaintiffs Emad Mugamal, Hussain Mugamal, Salah Mugamal, and their derivatives on January 18, 2018 on the basis of Presidential Proclamation 9645.

115.    The Mugamal family have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiffs Emad Mugamal, Jehan Alnajjar, Duaa Mugamal, Shahd Mugamal, Musleh Mugamal, Mohamed Mugamal, Hussain Mugamal, Samia Al-Namer, Sadam Mugamal, Yasmeen Mugamal, Salah Mugamal, Nadia Saleh, Nooria Mugamal, and Layan Mugamal's immigrant visas and/or provide them with an opportunity to submit a waiver.


**(Hussein) Ali Family**

116.    Plaintiff Hussein Ali filed an I-130 Petition for his wife, three sons, and Plaintiff

Laila Ali on March 8, 2005. On September 27, 2005, USCIS approved the I-130 Petitions and forwarded it to the NVC. Upon processing of the Petitions, NVC forwarded it to the U.S. Embassy in Sana'a.

117. The U.S. Embassy in Sana'a interviewed the family and provided immigrant visas for Plaintiff Hussein Ali's wife and one of his sons. In 2013, the U.S. Embassy in Sana'a interviewed Plaintiff Hussein Ali's remaining two sons and Plaintiff Laila Ali. Thereafter, Plaintiff Laila Ali's two brothers were issued immigrant visas but the U.S. Embassy in Sana'a failed to provide her with her immigrant visa.

118. After the war broke out in Yemen, Plaintiff Laila Ali and her husband, Plaintiff Dheyazan Saeed fled to Djibouti. The coupled arrived in Djibouti on June 2, 2017 with the hopes of finishing the immigrant visa process at the U.S. Embassy in Djibouti.

119. The Embassy provided Plaintiffs Laila Ali and Dheyazan Saeed with an immigrant visa interview on September 17, 2017. The interview went well and upon completion of the interview, the consular officer approved their immigrant visa application. The consular officer said the visa would be printed shortly and for them to check the system for when it would be ready.

120. After subjecting Plaintiffs Laila Ali and Dheyazan Saeed to more than six months of delay, Defendants erroneously refused Plaintiffs Laila Ali and Dheyazan Saeed previously approved immigrant visa in March of 2018.

121. Plaintiff Lailia Ali had given birth to the couple's first child, Saif Saeed, in February 1, 2018. The same consular officer that approved her immigrant visa six months earlier, gave Plaintiff Laila Ali her the refusal notice. Plaintiff Laila was holding her new born and in tears.

122. Plaintiffs Hussain Ali, Laila Ali, and Dheyazan Saeed have exhausted all administrative remedies. To date, the Defendants have failed to complete processing of Plaintiffs Laila Ali and Dheyazan Saeed's immigrant visas and/or provide them with an opportunity to submit a waiver.

**Aldafri Family**

123.    Plaintiff Ruqaia Aldafri filed an I-130 Petition for her husband, Plaintiff Rashed Shugaa on August 13, 2013. USCIS delayed adjudication of Plaintiff Ruqaia Aldafri's Petition until 2015 when USCIS interviewed Plaintiff Ruqaia Aldafri in regards to the I-130 Petition.

124.    Finally on November 25, 2016, USCIS approved the Petition and forwarded it to the NVC. The NVC processed the Petition and forwarded it to the U.S. Embassy in Djibouti on or about May 15, 2017.

125.    The Embassy provided Plaintiff Rashed Shugaa with an immigrant visa interview on August 28, 2017. The consular officer informed Plaintiff Rashed Shugaa that his interview went well and that his application was approved.

126.    Plaintiffs Ruqaia Aldafri and Rashed Shugaa waited patiently for the Embassy to print the visa but the Embassy continued to delay. On December 12, 2017, the Embassy summoned Plaintiff Rashed Shugaa to the Embassy had issued him a refusal notice on the grounds that his visa was not subject to Presidential Proclamation 9645. The consular officer said that his application was fine, but had to refuse it based on political reasons.

127.    Plaintiffs Ruqaia Aldafri and Rashed Shugaa have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Rashed Shugaa's immigrant visa and/or provide him with an opportunity to submit a waiver.

**Mussa Family**

128.    Plaintiff Ali Mussa filed an I-130 Petition for his son Iseal Mussa in 2012. USCIS delayed processing Plaintiff Ali Mussa's Petition until 2014. When USCIS finally sent Plaintiff Ali Mussa an interview notice, he was out of the country so the case was

closed.

129. Plaintiff Ali Mussa was force to file a new I-130 Petition in 2015. USCIS approved the I-130 Petition in early 2017 and it was processed by NVC and forwarded to the U.S. Embassy in Djibouti.

130. On August 28, 2017, Plaintiff Ali Mussa appeared at the Embassy with his wife and children. Upon interviewing the family, the consular officer approved Plaintiff Iseal Mussa's immigrant visa.

131. Rather than print Plaintiff Iseal Mussa' immigrant visa, Defendants subjected him to a five month delay. At the end of January, Defendants issued Plaintiff Iseal Mussa a refusal notice on the grounds that his previously approved immigrant visa was now refused pursuant to Presidential Proclamation 9645.

132. Plaintiffs Ali Mussa and Iseal Mussa have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Iseal Mussa's immigrant visa and/or provide him with an opportunity to submit a waiver.

**Algaad Family**

133. Plaintiff Altazam Algaad filed a Form I-130 Petition on behalf of her husband, Plaintiff Ahmed Al Saidi on or about September 21, 2015. The Petition was approved on or about October 11, 2016. Thereafter, NVC processed the Petition and forwarded it to the U.S. Embassy in Djibouti.

134. The U.S. Embassy in Djibouti provided Plaintiff Ahmed Al Saidi with an immigrant visa interview on or about August 1, 2017. Upon completion of the interview, the consular officer requested Plaintiff Ahmed Al Saidi obtain a financial co-sponsor for his Immigrant Visa Application. Within one month, Plaintiff Ahmed Al Saidi provided the U.S. Embassy in Djibouti with a co-sponsor.

135. On or about November 9, 2017, the U.S. Embassy in Djibouti issued Plaintiff Ahmed Al Saidi's visa. However, when Plaintiff Ahmed Al Saidi went to retrieve the

visa, he noticed it had an already expired. Plaintiff Ahmed Al Saidi made the consular officer aware of this issue. The consular officer noted that it was a mistake and that his visa would be re-issued. The U.S. Embassy in Djibouti never re-issued Plaintiff Ahmed Al Saidi's previously approved visa.

136. After being subjecting Plaintiff Ahmed Al Saidi to a fourth month delay, Defendants issued Plaintiff Ahmed Al Saidi a refusal citing Presidential Proclamation 9645 as the basis of the refusal.

137. Plaintiffs Altazam Algaad and Ahmed Al Saidi have exhausted all administrative options for relief. To date, the Defendants have failed to re-issue Plaintiff Ahmed Al Saidi's previously issued immigrant visa.

**Ahmed Family**

138. Plaintiff Nugood Ahmed filed an I-130 Petition for her husband in 2015. On or about September 2016, USCIS approved the Petition. Thereafter, the NVC processed the Petition and forwarded it to the U.S. Embassy in Djibouti.

139. On or about July 20, 2017, the Embassy provided Plaintiff Bassam Almontaser with an immigrant visa interview. At the close of the interview, the consular officer informed Plaintiff Bassam Almontaser that his immigrant visa application was approved and that his visa would be printed within three months.

140. After ninety days had passed, Plaintiff Bassam Almontaser inquired about his visa, but was told he needed to wait longer.

141. After waiting more than 6 months, the Embassy issued Plaintiff Bassam Almontaser a refusal notice pursuant to Presidential Proclamation 9645 on January 10, 2018.

142. Plaintiffs Nugood Ahmed and Bassam Almontaser have exhausted all administrative options for relief. To date, the Defendants have failed complete processing of Plaintiff Bassam Almontaser's previously approved immigrant visa

and/or provide him with an opportunity to submit a waiver.

**(Saleh) Murshed Family**

143.    Plaintiff Saleh Murshed filed an I-130 Petition for his wife Aisha Ragih on May 4,
2016. The Petition was approved in 2017 and subsequently processed by the NVC and
forwarded to the U.S. Embassy in Djibouti.

144.    On November 27, 2017, the Embassy provided Plaintiff Aisha Ragih with an
immigrant visa interview. At the conclusion of the interview, the consular office
notified Plaintiff Aisha Ragih that her immigrant visa application was approved. The
consular officer informed Plaintiff Aisha Ragih that her immigrant visa would be
printed shortly.

145.    After subjecting Plaintiff Aisha Ragih to three months of delay, Defendants issued
Plaintiff Aisha Ragih a refusal notice pursuant to Presidential Proclamation 9645 on
February 28, 2018.

146.    Plaintiffs Saleh Murshed and Aisha Ragih have exhausted all administrative
options for relief. To date, the Defendants have failed to complete processing of
Plaintiff Aisha Ragih's previously approved immigrant visa and/or provide her with an
opportunity to submit a waiver.

**Nagi Family**

147.    Plaintiff Hanan Nagi filed an I-130 Petition for her husband, Plaintiff Ali Hamood
on June 1, 2016. USCIS approved the Petition on February 13, 2017 and forwarded it
to the NVC. Thereafter, the NVC processed the Petition and forwarded it to the U.S.
Embassy in Djibouti.

148.    On November 28, 2017, the Embassy provided Plaintiff Ali Hamood with an
immigrant visa interview. According to the consular officer, everything was in order in
Plaintiff Ali Hamood application. The consular officer notified Plaintiff Ali Hamood

that his immigrant visa application was approved and that his visa would be printed shortly thereafter.

149.　In the following weeks, Plaintiff Ali Hamood inquired about his visa application but was told that he needed to wait longer. After waiting for four months, the Embassy summoned Plaintiff Ali Hamood to the Embassy and provided him with a refusal notice. The consular officer notified Plaintiff Ali Hamood that his previously approved immigrant visa was not refused pursuant to Presidential Proclamation 9645.

150.　Plaintiffs Hanan Nagi and Ali Hamood have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Ali Hamood's previously approved immigrant visa and/or provide him with an opportunity to submit a waiver.

**Husain Family**

151.　Plaintiff Mohammed Husain filed an I-130 Petition for his son Yaseen Hussein on April 6, 2006. The Petition was approved on January 9, 2007. Thereafter, the Petition was processed by the NVC and forwarded to the U.S. Embassy in Djibouti.

152.　The Embassy provided Plaintiff Yaseen Hussein with an immigrant visa interview on July 9, 2017. At the close of the interview, the consular officer requested DNA evidence from Plaintiff Hussein to conclusively prove that he was the biological child of Plaintiff Mohammed Husain.

153.　Plaintiff Yaseen Hussein provided the Embassy with DNA evidence proving his biological relationship with his father, Plaintiff Mohammed Husain on August 10, 2017. Upon reviewing the DNA evidence, the Embassy approved Plaintiff Yaseen Hussein's immigrant visa application.

154.　Defendants failed to print Plaintiff Yaseen Hussein's immigrant visa for more than six months. After subjecting Plaintiff Yaseen Hussein to a more than 6-month delay, Defendants refused his previously approved visa citing Presidential Proclamation 9645.

155.    Plaintiffs Mohammed Husain and Yaseen Hussein have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Yaseen Hussein's previously approved immigrant visa and/or provide him with an opportunity to submit a waiver.

**Almulaiki Family**

156.    Plaintiff Zahr Almulaiki filed an I-130 Petition for her husband, Fadil Almulaiki on or about 20158. USCIS approved the Petition on or about May 2016. Thereafter the Petition was processed by the NVC and forwarded to the U.S. Embassy in Djibouti.

157.    The Embassy provided Plaintiff Fadil Almulaiki with and immigrant visa interview on May 18, 2017. Upon completion of the interview, the consular officer approved Plaintiff Fadil Almulaiki's immigrant visa application.

158.    In the following months, Plaintiff Fadil Almulaiki inquired about his immigrant visa, but the Embassy repeatedly told him to be patient. Defendants failed to print Plaintiff Fadil Almulaiki's immigrant visa. After subjecting Plaintiff Fadil Almulaiki to nearly a 10-month delay, Defendants issued Plaintiff Fadil Almulaiki a refusal notice citing Presidential Proclamation 9645.

159.    Plaintiffs Zahr Almulaiki and Fadil Almulaiki have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Fadil Almulaiki's previously approved immigrant visa and/or provide him with an opportunity to submit a waiver.

**Saleh Family**

160.    Plaintiff Kaid Saleh filed an I-130 Petition for his wife, Tahani Ali on December 4, 2014. USCIS approved the Petition on December 17, 2015. The Petition was subsequently processed by the NVC and forwarded to the U.S. Embassy in Djibouti.

161.    The U.S. Embassy provided and immigrant visa interview for Plaintiff Tahani Ali

on September of 2017. Upon completion of the interview, the consular officer notified Plaintiff Tahani Ali that her immigrant visa application was approved.

162. After failing to print Plaintiff Tahani Ali's approved immigrant visa, Defendants issued her a refusal notice on March 6, 2018 citing Presidential Proclamation 9645.

163. Plaintiffs Kaid Saleh and Tahani Ali have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Tahani Ali's previously approved immigrant visa and/or provide her with an opportunity to submit a waiver.

**Taher Family**

164. Plaintiff Mohamed Taher filed an I-130 Petition for his son, Yassin Taher on February 24, 2016. USCIS approved the Petition on April 3, 2017. The Petition was subsequently processed by the NVC and forwarded to the U.S. Embassy in Djibouti.

165. The Embassy provided Plaintiff Yassin Taher with an immigrant visa interview on September 20, 2017. Upon completing Plaintiff Yassin Taher's immigrant visa interview and reviewing his file, the Embassy approved his immigrant visa.

166. The Embassy failed in printing Plaintiff Yassin Taher's immigrant visa. After subjecting Plaintiff Yassin Taher to a five-month delay, Defendants refused Plaintiff Yassin Taher's previously approved immigrant visa citing Presidential Proclamation 9645 as the basis of the refusal.

167. Plaintiffs Mohamed Taher and Yassin Taher have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Yassin Taher previously approved immigrant visa and/or provide him with an opportunity to submit a waiver.

**Qahtan Family**

168. Plaintiff Arwa Qahtan filed an I-130 Petition for her brother, Redan Qahtan on or

about 2004. USCIS approved the Petition on or about December 16, 2004. The Petition was subsequently processed by the NVC and forwarded to the U.S. Embassy in Sana'a, Yemen.

169. The U.S. Embassy in Sana'a delayed processing Plaintiff Redan Qahtan's immigrant visa. When the U.S. Embassy in Sana'a closed due the conflict in Yemen, Plaintiffs Arwa Qahtan and Redan Qahtan transferred the file to the U.S. Embassy in Djibouti.

170. Upon arriving to Djibouti, Plaintiff Redan Qahtan requested an immigrant visa interview. The U.S. Embassy provided and immigrant visa interview for Plaintiff Redan Qahtan on October 22, 2017. Upon completion of the interview, the consular officer requested Plaintiff Redan Qahtan submit pictures evidencing his biological sibling relationship with Plaintiff Arwa Qahtan. Thereafter, Plaintiff Redan Qahtan submitted family pictures to the Embassy and his immigrant visa was approved.

171. After failing to print Plaintiff Redan Qahtan's approved immigrant visa, Defendants issued him a refusal notice on or about January 2018 citing Presidential Proclamation 9645.

172. Plaintiffs Arwa Qahtan and Redan Qahtan have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Redan Qahtan's previously approved immigrant visa and/or provide him with an opportunity to submit a waiver.

**Alzookari Family**

173. Plaintiff Hizam Alzookari filed an I-130 Petition for his wife, Lutfiah Al Gamal on or about 2015. USCIS approved the Petition on or about May 31, 2016. The Petition was subsequently processed by the NVC and forwarded to the U.S. Embassy in Djibouti.

174. The U.S. Embassy provided and immigrant visa interview for Plaintiff Lutfiah Al

Gamal on October 31, 2017. Upon completion of the interview, the consular officer notified Plaintiff Lutifah Al Gamal that her immigrant visa application was approved.

175. After failing to print Plaintiff Lutfiah Al Gamal's approved immigrant visa, Defendants issued her a refusal notice on April 2018 citing Presidential Proclamation 9645.

176. Plaintiffs Hizam Alzookari and Lutfiah Al Gamal have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Lutfiah Al Gamal's previously approved immigrant visa and/or provide her with an opportunity to submit a waiver.

**Assaedy Family**

177. Plaintiff Gamil Assaedy filed an I-130 Petition for his son, Ahmed Assaedy on or about 2015. USCIS approved the Petition on about December 8, 2016. The Petition was subsequently processed by the NVC and forwarded to the U.S. Embassy in Djibouti.

178. The U.S. Embassy provided and immigrant visa interview for Plaintiff Ahmed Assaedy on about November 9, 2017. Upon completion of the interview, the consular officer notified Plaintiff Ahmed Assaedy that his immigrant visa application was approved.

179. After failing to print Plaintiff Ahmed Assaedy's approved immigrant visa for months, Defendants issued him a refusal notice on March 6, 2018 citing Presidential Proclamation 9645.

180. Plaintiffs Gamil Assaedy and Ahmed Assaedy have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Ahmed Assaedy's previously approved immigrant visa and/or provide him with an opportunity to submit a waiver.

**(Wedad) Ali Family**

181.    Plaintiff Wedad Ali filed an I-130 Petition for her husband, Abdulbaset Rageh on
April 13, 2015. USCIS approved the Petition on or about April 6, 2016 The Petition
was subsequently processed by the NVC and forwarded to the U.S. Embassy in
Djibouti.

182.    The U.S. Embassy provided and immigrant visa interview for Plaintiff Abdulbaset
Rageh on August 2, 2017. Upon completion of the interview, the consular officer
notified Plaintiff Abdulbaset Rageh that he needed a new co-sponsor. Plaintiff
Abdulbaset Rageh provided the Embassy with a new co-sponsor on or about October
4, 2017.

183.    After failing to print Plaintiff Abdulbaset Rageh's immigrant visa for months,
Defendants issued him a refusal notice on or about March 2018 citing Presidential
Proclamation 9645.

184.    Plaintiffs Wedad Ali and Abdulbaset Rageh's have exhausted all administrative
options for relief. To date, the Defendants have failed to complete processing of
Plaintiff Abdulbaset Rageh's previously approved immigrant visa and/or provide him
with an opportunity to submit a waiver.


**Salim Family**

185.    Plaintiff Kamal Salim filed an I-130 Petition for his son, Plaintiff Nasser Salim.
The Petition was approved on or about August 11, 20174 and subsequently processed
by NVC and forwarded to the U.S. Embassy in Djibouti on or about June of 2017.

186.    The Embassy provided Plaintiff Nasser Salim with an immigrant visa interview on
July 9, 2017. Upon completion of the interview, Plaintiff Nasser Salim's immigrant
visa was approved.

187.    In the following months, the Embassy issued immigrant visas for Plaintiff Kamal
Salim's other children, but failed to print Plaintiff Nasser Salim's approved immigrant

visa.

188. After delaying printing Plaintiff Nasser Salim's approved immigrant visa for months, Defendants issued Plaintiff Nasser Salim a refusal notice citing Presidential Proclamation 9645.

189. Plaintiffs Kamal Salim and Nasser Salim have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Nasser Salim's previously approved immigrant visa and/or provide him with an opportunity to submit a waiver.

**Alqassari Family**

190. Plaintiff Abduh Alqassari filed an I-130 Petition for his wife, Ehtiram Yahya on June 15, 2015. USCIS approved the Petition on or about April 5, 2017. The Petition was subsequently processed by the NVC and forwarded to the U.S. Embassy in Djibouti.

191. The U.S. Embassy provided and immigrant visa interview for Plaintiff Ehtiram Yahya on November 8, 2017. Upon completion of the interview, the consular officer notified Plaintiff Ehtiram Yahya that her immigrant visa application was approved.

192. After failing to print Plaintiff Ehtiram Yahya's approved immigrant visa, Defendants issued her a refusal notice on or about March 2018 citing Presidential Proclamation 9645.

193. Plaintiffs Abduh Alqassari and Ehtiram Yahya have exhausted all administrative options for relief. To date, the Defendants have failed to complete processing of Plaintiff Ehtiram Yahya's previously approved immigrant visa and/or provide her with an opportunity to submit a waiver.

## LEGAL FRAMEWORK

### I.   Legal Standard for Visa Processing and Issuance

194.   Upon approval of an I-130 Petition, USCIS transfers the Petition to NVC for visa processing.

195.   NVC requests that the petitioner and the beneficiary of the approved I-130 Petition to submit: (1) visa application form; (2) financial documents; and (3) supporting documents.

196.   NVC thereafter processes the petitioner and beneficiary's documents and transfer the petition to the appropriate U.S. embassy that the beneficiary resides in.

197.   Pursuant to the Foreign Affairs Manual, after the applicant has properly submitted the visa application form, medical exam, and paid the necessary fees, the applicant is provided an immigrant visa interview by a consular officer. *See 9 FAM 504.13(a)-(d).*

198.   Pursuant to the Foreign Affairs Manual, "decisions to issue or refuse an immigrant visa application must be based on personal interview, during which the consular officer must ensure that all required documentation has been provided, that there is a legal basis for the applicant to immigrate, and that there are no ineligibilities that would affect visa issuance." *See 9 FAM 504.13(e)(1).*

199.   Upon competition of the immigrant visa interview, the consular officer is tasked with making the determination as to whether the applicant shall be issued a visa or refused. "Once an application has been executed, the consular officer must either issue the visa or refuse it. A consular officer cannot temporarily refuse, suspend, or hold the visa for future action. If the consular officer refuses the visa, he or she must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available." *See 9 FAM 504.13(f) (emphasis added).*

200.   Pursuant to *Kerry v. Din*, 135 S.Ct. 2128 (2015), the Supreme Court requires a two part test to overcome consular non-reviewability: whether the consular officer's denial

of the visa was predicated on a facially legitimate connection and bona fide reason. The *Din* decision requires a two part determination, plus the plaintiffs must show an affirmative showing of bad faith on the part of the consular officer.

## II. Actual Practice and Procedure of Visa Processing and Issuance

201.  In processing visa applications, consular officers obtains SAOs from the Department of State in order to ascertain whether the applicant poses a risk to the United States.

202.  The Department of State's SAO program is sophisticated and consists of various types SAOs, including but not limited to:

- Condor SAO - which is primarily concerned with national security issues, including whether the applicant may engage in terrorist activity.
- Donkey and National Crime Information Center (NCIC) - which are based on name matches or "hits" occurring in various databases.
- Mantis SAO - which is focuses on the applicant's suspected access to sensitive technology with a potential military application and the unlawful exportation of that technology.
- SAOs related to Communist Party Members - which focuses on communist party members who are applying for fiancé or immigrant visas.

203.  The Foreign Affairs Manual directs consular officers to not reveal to applicants that their case has been referred for a Security Advisor Opinion. *See* 9 FAM Appendix E, 404.

204.  In addition to SAOs, the Department of State has created categories of administrative processing programs in which applicants are funneled to depending on their background. The administrative processing categories include, but are not limited to:

- Visa Horse which applies to visas from diplomat or foreign government officials, C-3 visas (FGO transit visa), or G visas (international organization or NATO visa). Visa Horse is believed to a limited to a specific nationalities.

- Visa Pegasus: is a name check program of Commonwealth of Independent States: Armenia, Azerbaijan, Belarus, Kazakhstan, Kyrgyzstan, Moldova, Russia, Tajikistan, Uzbekistan, and potentially Turkmenistan, Ukraine, and Georgia. However, the Visa Pegasus hold can be waived when certain diplomatic individuals are entering the U.S. to attend pre-ministerial, ministerial, pre-summit, summit, and/or White House meetings.

- Visa Bear is applied when foreign government officials, representatives to international organizations, or their families apply for a visa.

- Visa Eagle is a name check program for nationals of Cuba, China, Iran, Vietnam, and Russia who are seeking a nonimmigrant visa, immigrant visa, or refugee status. It is a pre-issuance check to make sure there is a biographic data match with the original application. The request is forwarded NVC to DHS. After 10 days the case should be processed, even if there is no response. However, DHS or DOS can make a hold request.

- Visa Hawk is a U.S. criminal history name check required for all immigrant visa applicants and derivatives. It checks names, aliases, and dates of birth for individuals not otherwise in the Consular Lookout and Support System, which is interconnected with the Consular Consolidated Database. The Department of State is not supposed to hold a visa for an unmarried applicant under the age of sixteen due to the results of the check without evidence the date of birth being incorrect.

- Visa Mantis is a special check for individuals who will have access to specialized technology while in the U.S. or are knowledgeable or learning in a sensitive or critical field. This primarily impacts F-1 and J-1 nonimmigrant

visas, especially from Cuba, China, Iran, and Russia. However, it can potentially impact anyone.

- Visa Merlin is the background check process for all refugees and asylees.

- Visa Viper is used to report known or suspected terrorists for inclusion in the relevant terrorist watch lists. Not all posts retain information on why they nominate individuals to these lists, which can be the basis for future false hits that are exceedingly difficult to remove - for example we had a client who matched the watch list as a suspected terrorist due to his name and a political party membership in his home country that matched the name of a known terrorist on another continent who was a member of a terrorist organization with the same name as the political party. Getting that through the bureaucracy of DHS and DOS was painfully slow.

- Visas Viper places individuals on the Terrorist Screening Database maintained by the Terrorist Screening Center at the FBI. The TSC list is generally separated into two groups, "No Fly" which completely blocks visa issuance as well as commercial aviation travel, and the "Selectee" list which requires additional screening and is often reported by individuals who always get their airline tickets stamped "SSSS" (Secondary Security Screening Selection).

- Visas Condor is additional screening and background checks based on country of birth, citizenship, or residency in the "State Sponsors of Terrorism" (T-7) list: Cuba, Iran, Iraq, Libya, North Korea, Sudan, Syria; or from the "List of 26": Afghanistan, Bahrain, Djibouti, Egypt, Eritrea, Indonesia, Iran, Iraq, Jordan, Kuwait, Lebanon, Libya, Malaysia, Morocco, Oman, Pakistan, Qatar, Saudi Arabia, Somalia, Sudan, Syria, Tunisia, Turkey, UAE, Yemen. This is a mandatory stop list and allegedly takes 2 to 4 days, thanks in part to the partially rolled out PATRIOT (Pre-Adjudicated Threat Recognition and Intelligence

Operations Team) system managed by ICE, but often take 3 to 6 weeks and if there is a hit, the delay is indefinite.

- Visas Donkey is the responsive SAO when there is a name check "HIT" or "IDENT". A "HIT" is a near-match of which 98% are resolved in 120 days, or an "IDENT" which is an exact match and typically resolved within 30 days.

205. Under the current structure, consular officers are encouraged to increase scrutiny on cases in order to come up with a basis for pre-textual denials – similar to what Defendant Department of Homeland Security's actions in implementing CARRP and TRIG cases.

206. Consular officers are pressured to refer cases to one of the various administrative processing categories in order to allow security and intelligence agencies an opportunity to subject the visa application to further scrutiny.

207. Defendant Department of Homeland Security effectively determines the outcome of the visa application and even has the authority to tell the Department of State post to hold the application.

208. Defendant Department of Homeland Security may delay the adjudication of a visa even after they've performed a complete review of the application.

209. Accordingly, under the current system of visa processing, consular officers do not have discretionary authority to make final determinations on visas.

## III. Actions Taken By the Trump Administration To Centralize the Authority in Visa Processing With Executive Branch Agencies in Washington D.C.

210. Defendant President Trump and Defendant Miller has substantially diminished the role and capacity of Defendant Department of State and Consulates in processing visas.

211. Defendant President Trump's Executive Order 13769 was crafted by Defendant Miller. Defendant Miller has no experience or expertise in visa adjudications and/or

immigration law.[1] Stephen Miller is well documented for holding racist and xenophobic views, particularly against Muslim immigrants.

212. Defendant President Trump and Defendant Miller reportedly did not seek cooperation from any federal agency, including the Department of State, the Department of Homeland Security, Customs and Border Patrol, etc.[2]

213. Furthermore, Defendant President Trump and Defendant Miller did not seek legal review by any agency, including the Department of Justice or the Department of State before implementing Executive Order 13769.

214. After Defendant President Trump's Executive Order 13769 was enjoined by the Ninth Circuit, Defendant Miller appeared on CBS Face the Nation and stated "we have a judiciary that has taken far too much power and become in many cases a supreme branch of government." Defendant Miller further stated "our opponents, the media and the whole world will soon see as we begin to take further actions, that the powers of the president to protect our country are very substantial and will not be questioned."[3]

215. Former Secretary of State Rex Tillerson sent out several cables in an attempt to enact Defendant President Trump's second Muslim ban, Executive Order 13780 as well as the Presidential Proclamation.

216. The collective efforts by Defendant President Trump and Defendant Miller as well as Defendants Department of State and Department of Homeland Security to create new policies and procedures in visa processing substantially diminished whatever minimal discretion consular officers previously had in adjudicating visas.

---

[1] https://www.theguardian.com/us-news/2017/mar/15/stephen-miller-new-trump-travel-ban (last visited on April 23, 2018)

[2] https://www.nytimes.com/2017/01/29/us/politics/donald-trump-rush-immigration-order-chaos.html (last visited on April 23, 2018)

[3] https://www.theguardian.com/us-news/2017/feb/12/trump-administration-considering-narrower-travel-ban (last visited on April 23, 2018).

## IV.  Presidential Proclamation is Unconstitutionally Discriminates on Visa Applicants Based on Country of Origin and Religion

217.  An analysis of the effects of the Proclamation shed light on the President's true intentions - to implement "a total and complete shutdown of all Muslims entering the United States" as promised while campaigning for the Presidency.

218.  Eighty-five percent of the people banned from entry and immigration to the United States are from the Muslim-majority countries listed in the Presidential Proclamation.

219.  According to the 2016 State Department records, the Presidential Proclamation restricts the issuance of 21% of all immigrant visas issued to Muslim-majority countries and the resettlement of approximately 65% of all Muslims refugees' entries into the United States.

220.  The Proclamation bans 76% of nonimmigrant visas applicants and 91% of immigrant visa applicants affected by the Executive Order 13780.

221.  Of the more than 65,000 visas issued in 2016 to the seven countries banned entry into the United States, more than 90% to visitors from Iran, Syria, and Yemen – all Muslim-majority countries.  While the Proclamation would have effected on 61 visas from North Korea.

222.  Defendant Department of Homeland Security's review demonstrates many other countries have failed to meet the stated criteria to remain off the list. At least 86 countries did not issue electronic passports in 2017, and many others still recognize the use of older non-electronic passports. The CATO Institute reported that at least 16 countries never report lost or stolen passports and as of 2014, about 150 – including large countries such China and India – rarely report lost or stolen passports.  In May of 2017, 12 countries regularly refused to accept deportees from the United States, only one is listed in the Proclamation. In 2016, the State Department identified 13 "terrorist safe havens" – only three made the list, according to the Cato Institute.

223. The Presidential Proclamation purports to have a secular purpose of protecting the nation form terrorism related and public safety risks. The President claims banning nationals from the eight designated countries will achieve this aim. Given that nationals from the eight designated banned countries were already subjected to heighten scrutiny. The notion that Muslims are more likely to commit terrorism is a myth that is refuted by statistical data. No immigrant from any of the banned Muslim majority countries has carried out a fatal terror attack within the U.S. in more than four decades.

224. By banning the targeted countries, Defendants are banning the countries that collectively make up the highest percentage of the total number of Muslim immigrants. Thus, Defendants are advancing a policy that inhibits religion. Thirdly, the Defendant President Trump and Defendant Miller have entangled themselves with religion through its repeated and continuous call to ban Muslim immigrants.

## INJURY TO PLAINTIFFS

225. Defendants' decision to refuse Plaintiffs-Beneficiaries' previously approved immigrant visas is facially illegitimate and absent a bona fide reason. It is a willful act of the Defendants in abrogation of their duty to follow the proscribed procedures and print Plaintiffs-Beneficiaries' immigrant visas upon approval and to wrongfully refuse the visas thereafter. Defendants are in clear violation of the due process rights of the Plaintiffs-Petitoiners because their refusal of Plaintiffs-Beneficiaries immigrant visas was absent a facially legitimate and bona fide reason and done in bad faith. *See Kleindinst v. Mandel*, 408 U.S. 753 (1972); *Kerry v. Din*, 135 S.Ct. 2128 (2015).

226. Defendants' actions have caused Plaintiffs Yayha Murshed, Saadiah Nasser, Abdulla Mugamal, Hussein Ali, Ahmed Alharbi, Ruqaia Aldafri, Ali Mussa, Altazam Algaad, Nugood Ahmed, Saleh Murshed, Hanan Nagi, Mohammed Hussain, Zahr Almulaiki, Kaid Saleh, Mohamed Taher, Arwa Qahtan, Hizam Alzookari, Gamil Assaedy, Wedad Ali, Kamil Salim, and Abduh Ahmed Alqassari severe emotional and

financial hardship.

227. Defendant's actions have caused Plaintiffs Ghadeer Murshed, Taha Thabit, Aisha Thabit, Qasem Thabit, Emad Mugamal, Jehan Alnajjar, Duaa Mugamal, Shahd Mugamal, Musleh Mugamal, Mohamed Mugamal, Hussain Mugamal, Samia Al_Namer, Sadam Mugamal, Yasmeen Mugamal, Salah Mugamal, Nadia Saleh, Nooria Mugamal, Layan Mugamal, Laila Ali, Dheyazan Saeed, Saif Saaed, Gameelah Alharbi, Riyadh Alharbi, Nidal Assieeby, Ahmad Alharbi, Rashed Al Shugaa, Iseal Mussa, Ahmed Al Saidi, Bassam Almontaser, Aisha Ragih, Ali Hamood, Yaseen Hussein, Fadil Almulaiki, Tahani Ali, Yassin Taher, Redan Qahtan, Lutfiah Al Gamal, Ahmed Assaedy, Abdulbaset Rageh, Nasser Salim, and Ehtiram Yahya severe emotional and financial hardship.

228. Defendants' actions unlawfully infringe upon Plaintiffs-Petitioners' liberty interests to make personal choices with regard to family matters free from unjustifiable government interference in violation of their right to substantive due process guaranteed by the Fifth Amendment of the United States Constitution.

229. Defendants' actions unlawfully infringe upon Plaintiffs-Beneficiary's interest in having their family member's immigrant visa applications adjudicated in a manner consistent with her constitutionally protected procedural due process interests.

230. The injury suffered by Plaintiffs-Petitioners is the result of the willful and deliberate delay of Defendants to not issue Plaintiffs-Beneficiaries' approved immigrant visas and then wrongfully refuse the visas by erroneously citing Presidential Proclamation 9645.

231. So long as Defendants continue to refuse to issue Plaintiffs-Beneficiaries' previously approved immigrant visas, Plaintiffs will severely be injured by their actions, which were taken in bad faith.

232. The injury suffered by Plaintiffs will be redressed if they prevail in this Writ of Mandamus.

233. Plaintiffs have taken all administrative acts available to seek redress for their

injuries.

## COUNT ONE
### Mandamus Act
### 28 U.S.C. § 1361; 28 U.S.C. § 1651
### (As to all Defendants)

234.    The allegations set forth in Paragraphs 1 through 233 are repeated and incorporated as if fully set forth herein.

235.    Defendants are severally and jointly charged with the mandatory responsibility to administering and implementing the Immigration and Nationality Act.

236.    Defendants each severally and jointly bear responsibility for timely adjudication of applications for visas and for orderly attendant procedures such as administrative processing.

237.    Defendants have willfully and unreasonably delayed and refused to perform their clear, non-discretionary duties.

238.    Plaintiffs have a clear right to have their immigrant visa application adjudicated pursuant to the INA.

239.    Plaintiffs have a clear right to have a facially legitimate explanation and bona fide basis for the denial of their immigrant visa application. *See 8 C.F.R. 42.80(b)*; *Kleindienst v. Mandel*, 408 U.S. 753 (1972); *Kerry v. Din*, 135 S.Ct. 2128 (2015).

240.    Defendants owe a duty to properly, and in good faith, complete processing of the application for an immigrant visa and render a facially legitimate and bona fide decision which Defendants have failed to perform.

241.    Plaintiffs have exhausted any administrative remedies that may exist and there exists no other adequate remedy.

242.    The injury to the Plaintiffs will be redressed by compelling Defendants to provide a facially legitimate and bona fide reason for refusing the immigrant visa application, and properly adjudicating their immigrant visa applications in good faith and without

any further unduly delay.

243. Defendants each severally and jointly have the authority and jurisdiction required to adjudicate and influence the issuance of Plaintiffs' immigrant visa application.

244. The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiffs. *See 28 U.S.C. § 1361.*

245. Pursuant to *28 U.S.C. § 1361*, Defendants must be compelled to discharge their statutory duties owed to Plaintiffs so that they may be promptly and accurately informed of the outcome of their immigrant visa application and issued a facially legitimate and bona fide determination in good faith.

246. Defendants President Trump and Miller violated Plaintiffs-Petitioner's Fifth Amendment right to Equal Protection by constructing and implementing Presidential Proclamation 9645, which deliberately violates Plaintiffs' right to be free from discrimination based on ethnic background. Plaintiffs claim can only be redressed through a *Bivens* action as there is no other form of remedy available to Plaintiffs-Petitioners' ongoing violation of their Fifth Amendment right to equal protection under the law.

## COUNT TWO
### Administrative Procedures Act
### (5 U.S.C. § 555; 5 U.S.C. § 701 et seq.)
### (As to all Defendants)

247. The allegations set forth in Paragraphs 1 through 246 are repeated and incorporated as if fully set forth herein.

248. Defendants' practices, interpretations of law, conduct and failure to act violate the *Administrative Procedures Act,* as the alleged agency action is:

a. "arbitrary, capricious and an abuse of discretion or otherwise not in accordance with law," under *5 U.S.C. § 702(2)(A)*; and

43

b. "without observance of procedures required by law," under *5 U.S.C. § 706(2)(D)*.

249. By failing to render timely action on the Plaintiffs' applications for an immigrant visa, Defendants have severally and jointly violated the *Administrative Procedures Act* and this constitutes agency action that is arbitrary and capricious, and not in accordance with law.

250. By failing to issue Plaintiffs-Beneficiaries' previously approved immigrant visas and waiting until the Presidential Proclamation took effect in order to issue them a refusal was an act of extreme bad faith on the part of Defendants.

251. This Court has power under *5 U.S.C. § 706(1)* to redress agency actions which are "arbitrary, capricious and an abuse of discretion or otherwise not in accordance with law."

252. Defendants have unlawfully withheld proper adjudication of Plaintiffs' immigrant visa application by failing to provide a facially legitimate and bona fide reason for denying Plaintiffs-Beneficiaries' immigrant visa applications.

253. Defendants are severally and jointly required by *8 C.F.R. § 42.80(b)* to provide the Plaintiffs a with a facially legitimate and bona fide reason for the denial of the immigrant visa

254. By failing to provide a facially legitimate and bona fide reason for the denial of the immigrant visa application, Defendants have not acted in good faith.

255. The decision by Defendants was arbitrary and capricious, and constitutes an abuse of the discretion by failing to adhere to the statutorily mandated duty to issue an approved visa. Moreover, Defendants' decision was arbitrary and capricious due to the fact that the Presidential Proclamation is a proactive measure and does not apply to previously approved visas.

256. As a result, Plaintiffs have suffered and continue to suffer irreparable harm and damages entitling them to declaratory, injunctive and other relief.

## COUNT THREE
### Nondiscrimination Clause of INA
### 8 U.S.C. § 1152(a)(1)(A)
### (As to all Defendants)

257.   The allegations set forth in Paragraphs 1 through 256 are repeated and incorporated as if fully set forth herein.

258.   Pursuant to 8 U.S.C. § 1152(a)(1)(A) no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence.

259.   Defendants have promulgated and enforced a program that delays adjudication of immigrant visa applications for Yemen nationals.

260.   Defendants have also promulgated and enforced Presidential Proclamation 9645 which discriminates against Plaintiffs based on national origin. The Presidential Proclamation clearly targets and discriminates on individuals based on their country of origin in direct violation of the Nondiscrimination Clause of the INA.

261.   The Presidential Proclamation assumes, without reason and/or statistical support, that the entire population of countries targeted are a threat to the United States and restricts their entry.

262.   The Presidential Proclamation fails to provide an adequate waiver for individuals. It purports to provide a case-by-case waiver, but in practice the waiver has been issued only on rare occasions.

263.   Defendants' implementation of the Presidential Proclamation violates the INA and Plaintiffs constitutionally protected rights to be free from discrimination based on their ethnicity and/or national origin.

264.   As a result, Plaintiffs have suffered and continue to suffer irreparable harm and damage entitling them to declaratory, injunctive and other relief.

## COUNT FOUR
### Fifth Amendment Equal Protection
### (Against All Defendants)

265.   The allegations set forth in Paragraphs 1 through 264 are repeated and incorporated as if fully set forth herein.

266.   The Due Process Clause of the Fifth Amendment of the United States Constitution provides that "No person shall…be deprived of life, liberty, or property, without due process of law." This Clause contains an equal protection component which prohibits the Federal Government from denying equal protection of the laws.

267.   Defendants violated Plaintiffs-Petitioners' constitutionally protected rights to be free from discrimination on the basis of race, religion, and national origin by refusing Plaintiffs-Beneficiaries immigrant visa based on a Presidential Proclamation that targets them on account of their national origin and religion.

268.   Defendants' unlawful and discriminatory and unlawful refusal of Plaintiffs-Beneficiaries previously approved immigrant visas continues to cause separate families and cause undue emotional and financial hardship on Plaintiffs.

269.   But for Defendants purposeful delays, Plaintiffs-Beneficiaries would have been issued their approved immigrant visas long before the Presidential Proclamation took effect.

270.   Defendants President Trump and Miller violated Plaintiffs-Petitioner's constitutionally protected right under the Fifth Amendment Equal Protection Clause by

refusing Plaintiffs-Beneficiaries' previously approved immigrant visas the account of Plaintiffs-Beneficiaries national origin and Islamic faith.

271. Pursuant to *Bivens*, Plaintiffs seek damages for Defendants President Trump and Miller's violation of Plaintiff-Petitioner's constitutionally protected right to be free from discrimination on the account of their race and/or religion under the Equal Protection Clause of the Fifth Amendment of the United States Constitution.

272. Plaintiffs' *Biven* claim is not a new claim, it avers damages under the Equal Protection Clause of the Fifth Amendment pursuant to *Davis v. Passman*, 442 U.S. 228 (1979).

273. As a result, Plaintiffs continue to suffer irreparable harm and injury due to Defendants' failure to properly process Plaintiffs-Beneficiaries' previously approved immigrant visas.

## COUNT FIVE
### Fifth Amendment Due Process
### (As to all Defendants)

274. The allegations set forth in Paragraphs1 through 273 are repeated and incorporated as if fully set forth herein.

275. The Due Process Clause of the United States Constitution requires that the Defendants, acting in their official capacity as federal agents, provide Plaintiffs with a fair and impartial adjudication, both in appearance and in actuality. *See Bustmante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008).

276. The citation of the Presidential Proclamation as the basis of refusal is erroneous because the Presidential Proclamation does not apply to visas that were approved before its effective date.

277. As a United States citizens and/or Legal Permanent Resident, Plaintiffs Yayha Murshed, Wafa Kaid, Abdullah Mohamed Muthana, Ruqaia Aldafri, Saadiah Nasser, Ahmed Alharbi, and Altazam Algaad are entitled to a constitutionally valid, facially legitimate reason for government denial of a visa application that infringes upon his constitutional rights. *See Bustamante v. M*ukasey, 531 F.3d 1059 (9th Cir. 2008); *Kleindinst v. Mandel*, 408 U.S. 753 (1972); *Kerry v. Din*, 135 S.Ct. 2128 (2015).

278. A facially legitimate and bona fide reason requires Defendants to point out the specific statutory authority for the denial and demonstrate, based on actual evidence, that the statute applies. *See Kerry v. Din*, 135 S.Ct. 2128 (2015); *Bustamante v. Mukasey*, 531 F.3d 1059 (9th Cir. 2008); *Kliendinst v. Mandel*, 408 U.S. 753 (1972); See also *Allende v. Shultz*, 845 F.2d 1111, 1116-1121 (1st Cir. 1998).

279. The failure of Defendants to cite a facially legitimate and bona fide reason for the basis of the denial injured Plaintiffs Yayha Murshed, Wafa Kaid, Abdullah Mohamed Muthana, Ruqaia Aldafri, Saadiah Nasser, Ahmed Alharbi, and Altazam Algaad's due process right to a fair and impartial adjudication of Plaintiffs Ghadeer Murshed, Dheyazan Nasser Qaid, Samah Muthana, Rashed Shugaa, Taha Thabit, Aisha Thabit, Qasem Thabit, and Ahmed Al Saidi's immigrant visa applications, and has infringed upon his constitutional rights to freedom in his choice to make family decisions.

280. As a result, Plaintiffs have suffered, and will continue to suffer irreparable harm and damages entitling them to declaratory, injunctive and other relief.


**COUNT SIX**
**Fifth Amendment Procedural Due Process**
**(Against All Defendants)**

281. The allegations set forth in Paragraphs 1 through 280 are repeated and incorporated as if fully set forth herein.

282.  Procedural Due Process requires that procedural application of the law be fair and just, such that individuals are not subjected to the arbitrary exercise of governmental authority.

283.  Accordingly, Procedural Due Process requires that an individual be entitled to notice and an opportunity to be heard before the government can lawfully deprive him or her of an interest that is protected under the Due Process Clause, to wit: life, liberty or property.

284.  Plaintiffs have a constitutionally protected liberty interest in making personal choices regarding family matters in a manner that is free from unjustifiable government interference in said choices.

285.  Defendants' unlawful refusal of Plaintiffs-Beneficiaries' previously approved immigrant visas constitutes a de facto deprivation of Plaintiffs constitutionally protected liberty interests under the Fifth Amendment of the United States Constitution.

286.  As a result, Plaintiffs have suffered and continue to suffer irreparable harm and damage entitling them to declaratory, injunctive and other relief.


**COUNT SEVEN**
**First Amendment Establishment Clause**
**(Against All Defendants)**

287.  The allegations set forth in Paragraphs 1 through 286 are repeated and incorporated as if fully set forth herein.

288.  The Establishment Clause of the First Amendment of the United States Constitution prohibits the Federal Government from officially preferring one religion over another.

289.     Defendants' implementation of Presidential Proclamation 9645, which targets six

Muslim-majority countries is yet another iteration of President Trump's effort to ban

Muslims from entering the United States.

290.     Accordingly, Defendants violate the Establishment Clause by implementing

Presidential Proclamation 9645 which denies immigrants entry to the United States

based on their Islamic faith.

291.     Defendants' discriminatory policies and practices towards delaying processing of

immigrant visa applications due to Plaintiffs-Beneficiaries Islamic faith violates the

Establishment Clause of the First Amendment of the United States Constitution.

292.     Defendants erroneously refusal of Plaintiffs-Beneficiaries' previously approved

immigrant visas pursuant to the Presidential Proclamation is a violation of the

Establishment Clause. By originally approving Plaintiffs-Beneficiaries immigrant

visas, Defendants concluded that Plaintiffs were cleared to immigrate to the United

States and only later refused Plaintiffs-Beneficiaries' previously approved visas due to

their national origin and Islamic faith pursuant to Presidential Proclamation 9645.

293.     As a result, Plaintiffs have suffered and continue to suffer irreparable harm and

damage entitling them to declaratory, injunctive and other relief.


**COUNT EIGHT**
**Conspiracy to Interfere With Civil Rights**
**42 U.S.C. § 1985**
**(Against All Defendants)**

294.     The allegations set forth in Paragraphs 1 through 293 are repeated and incorporated

as if fully set forth herein.

295.    42 U.S.C. § 1985(3) prohibits "two or more person in any State or Territory [to] conspire…, for the purposes of depriving, either directly or indirectly, any person or class of person of the equal protection of the laws, or of equal privileges and immunities under the laws…"

296.    Defendants President Trump, Miller, Sullivan, Nielsen, Wray, and Sessions by agreeing to implement Presidential Proclamation 9645 whereby Plaintiffs-Beneficiaries' previously approved immigrant visas were refused on the account of their national origin of Yemen and Islamic faith, conspired to deprive Plaintiffs-Petitioners of the equal protection of the law and of equal privileges and immunities of the law of the United States.

297.    President Trump's Presidential Proclamation 9645, which includes Yemen as one of the countries whose nationals are restricted from traveling to the United States, states "the Secretary of Homeland Security, in consultation with the Secretary of State, and the Attorney General, has determined that a small number of countries…remain deficient at this time…"

298.    Defendants are jointly and severally liable for violating Plaintiffs statutorily and constitutionally protected rights because the policy is an inter-agency program that utilizes the resources and cooperation of USCIS, DHS, State Department, Department of Justice, ICE, and Customs and Border Protection.

299.    President Trump has been vocal about banning Muslims from entering the United States since he was a candidate for the office of the president.

300.    On September 30, 2015, Candidate Trump pledged to kick all Syrian refugees out of the country. "They could be ISIS, I don't know," said Mr. Trump.

301. On October 21, 2015, Candidate Trump said he would "certainly look at" the idea of closing mosques in the United States.

302. President Donald Trump issued a press release calling for a "total and complete shutdown of Muslims entering the United States." Voorhees, Josh, *Trump Calls for "Total and complete Shutdown of Muslims Entering the United States"* Slate, (Dec. 7, 2015).

303. In an interview, President Donald Trump explained how immigration would work in the United States and stated: "[T]hey would say, are you Muslim?" An interviewer responded: "And if they said 'yes.' They would not be allowed into the country." To which Mr. Trump responded, "That is correct." Rhodan, Maya, *Here's How Donald Trump Says His Muslim Ban Would Work*, TIME (Dec. 8, 2015), available at http://time.com/4140717/donald-trump-muslim-ban-morning-joe-how-it-would-work/.

http://www.slate.com/blogs/the_slatest/2015/12/07/trump_calls_for_total_and_compl ete_ban_on_muslims_coming_to_the_united_states.html.

304. On March 22, 2016, Candidate Trump said "We're having problems with the Muslims, and we're having problems with Muslims coming into the country."

305. Defendant President Trump has continued his hateful and discriminatory rhetoric towards Muslims. In November of 2017, President Trump retweeted an anti-Muslim propaganda from a far-right British group.

306. As President of the United States, Defendant President Trump facilitated and encouraged the executives of the agencies and departments tasked with the administration of the nation's immigration laws to craft and enforce discriminatory

practices, policies, and programs against Muslims seeking immigration benefits. In April 2017, Defendant President Trump signed an executive order directing agencies to draft new rules and guidance for the legal immigration system.

307. Defendant Miller was the chief architect of President Trump's first Muslim Ban, Executive Order 13769. Defendant Miller implied that the administration's intent was to prevent the development of a Muslim community in the United States resembling those of Europe, viewing that as a national security threat in itself.

308. Defendant Sessions has been a vocal supporter of President Trump's efforts to bar Muslims from immigrating to the United States.

309. During an October 2015 radio interview with Stephen Bannon of Breitbart, Attorney General Sessions praised a 1924 law intended to end acceptance of all races into the United States saying that: "In seven years we'll have the highest percentage of Americans, non-native born, since the founding of the Republic. Some people think we've always had these numbers, and it's not so, it's very unusual, it's a radical change. When the numbers reached about this high in 1924, the president and congress changed the policy, and it slowed down immigration significantly, we then assimilated through the 1965 and created really the solid middle class of America, with assimilated immigrants, and it was good for America. We passed a law that went far beyond what anybody realized in 1965, and we're on a path to surge far past what the situation was in 1924."

310. Defendants' discriminatory policy to refuse immigrant visas on the basis of national origin and religion violates the INA, Establishment Clause of the First Amendment,

Equal Protection Clause and Due Process Clause of the Fifth Amendment, and the APA.

311. Defendants President Trump, Miller, Sullivan, Nielsen, Wray, and Sessions conspiracy to circumvent the immigration laws of the country and implement a discriminatory policy which denies immigrants entry into the United States based on their country of origin and religion violates Plaintiffs statutory and constitutionally protected rights to be free from discrimination on the account of his race and religion.

312. As a result Defendants unlawful conduct, Plaintiffs have suffered emotional distress, medical hardship, and financial hardship and are accordingly entitled to damages against all Defendants.

## COUNT NINE
### Declaratory Judgment Act
### (As to all Defendants)

313. The allegations set forth in Paragraphs1 through 312 are repeated and incorporated as if fully set forth herein.

314. Plaintiffs contend that Defendants' actions and decisions wrongfully refuse their immigrant visa applications without a facially legitimate and bona fide reason violates the INA, APA, federal regulations, and Plaintiffs constitutionally protected rights under the First and Fifth Amendments.

315. Plaintiffs seek a declaration to that effect under *28 U.S.C. § 2201* as the Defendants have severally and jointly failed to properly and accurately discharge their mandated official duties.

316. As a result, Plaintiffs have suffered and continue to suffer irreparable harm and damage entitling them to declaratory, injunctive and other relief.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request the Court to grant the following relief:

A. Declare that the failure of Defendants to properly and accurately adjudicate Plaintiffs' immigrant visa applications was arbitrary and capricious pursuant to *28 U.S.C. § 2201.*

B. Mandate that Defendants correctly adjudicate Plaintiffs' immigrant visa applications under a facially legitimate and bona fide reason made in good faith within thirty days or any other such time the Court deems reasonable.

C. Mandate that Defendants provide Plaintiffs with an opportunity to submit a waiver if necessary to complete adjudication of Plaintiffs' immigrant visa applications.

D. Enjoin Defendants from further implementing the *Proclamation 9645, Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats* henceforth.

E. If Plaintiffs prevail, they will seek attorney's fees and costs pursuant to 42 U.S.C. § 1988 and under the Equal Access to Justice Act ("EAJA"), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412. Accordingly, aware Plaintiffs' costs and reasonable attorney's fees; including but not limited to, costs and reasonable attorney's fees available under EAJA and 42 U.S.C. § 1988.

F. Grant other such relief as the Court may deem just and proper.

Dated: April 25, 2018

By: _____

JULIE A. GOLDBERG, ESQ.
ABADIR BARRE, ESQ.
Goldberg & Associates
5586 Broadway
Third Floor
Bronx, NY 10463

(718) 432-1022
(718) 432-1044(facsimile)
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the date indicated below, I caused service of the foregoing PLAINTIFFS' EX-PARTE PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF via personal delivery to United States Attorney's Office, Eastern District of New York.

DATED this 25th day of April 2018, at the Bronx, New York.

By: _____
Julie A. Goldberg, Esq.
Attorney for the *Plaintiffs*
**GOLDBERG & ASSOCIATES**
5586 Broadway Ave
Third Floor
Bronx, NY 10463
Telephone: (718) 432-1022
Facsimile: (718) 432-1044
Email: USCIS@goldbergimmigration.com